## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CISCO TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| CERTIFICATION TRENDZ LTD. d/b/a TestKing.com; and FREETECH SERVICES LTD. d/b/a Pass4sure.com; and GLOBAL SIMULATORS LTD. d/b/a "TestInside" and Test-Inside.com, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | June 23, 2015 |
| | ) | |

### COMPLAINT

Plaintiff, CISCO TECHNOLOGY, INC. ("Cisco" or "Plaintiff"), by and through its undersigned attorneys, and for its Complaint for injunctive and other relief against the defendants, CERTIFICATION TRENDZ LTD. d/b/a TestKing.com ("TestKing"), FREETECH SERVICES LTD. d/b/a Pass4sure.com ("Pass4sure"), and GLOBAL SIMULATORS LTD. d/b/a "TestInside" and Test-Inside.com ("TestInside") (collectively, "Defendants"), hereby states and alleges the following:

### Nature of Action

1.      This action seeks recovery for violations of the Copyright Act, 17 U.S.C. § 101, *et seq*., and the Lanham Act, 15 U.S.C. §§ 1114, 1125.  All claims herein arise out of Defendants' unlawful copying and distribution of copyrighted material appearing on Cisco's Certification Exams, and Defendants' misrepresentations of the true nature, source and derivation of their products.  Plaintiff seeks permanent injunctive relief to

enjoin Defendants from their ongoing violations, and an Order that the offending domain name be impounded and/or transferred to Cisco, as well as monetary damages.

**Parties, Jurisdiction and Venue**

2.     Cisco is an information technology company founded in 1984, with its principal place of business in San Jose, California.  Cisco is a worldwide leader in developing and implementing the networking technologies that enable global interconnectivity and the Internet of Everything.  Cisco employs thousands of networking engineers at its headquarters in San Jose, California, and elsewhere, and invests billions of dollars annually in research and development focused on creating the future of networking technologies, and supporting products and services.  In addition to its San Jose California corporate headquarters, Cisco maintains offices in, among other places, Farmington, Connecticut, and Norwalk, Connecticut.

3.     TestKing.  Upon information and belief, TestKing is located in Bristol, United Kingdom.   TestKing operates the website known as TestKing.com. TestKing.com has been registered anonymously through "Whois Privacy Protection Services, Inc."  Despite purporting to be a business entity and interacting with the public and consumers on a regular basis through its website, TestKing has chosen to shield its actual contact information from the public by registering TestKing.com in this manner.

4.     Pass4sure.   Upon information and belief, Pass4sure is located in Manchester, United Kingdom.   Pass4sure operates the website known as Pass4sure.com. Pass4sure.com has been registered anonymously through "Whois Privacy Protection Services, Inc."  Despite purporting to be a business entity and interacting with the public and consumers on a regular basis through its website,

Pass4sure has chosen to shield its actual contact information from the public by registering Pass4sure.com in this manner.

5.     <u>TestInside</u>.   Upon information and belief, TestInside is located in London, United Kingdom.   TestInside operates the website known as Test-Inside.com. Test-Inside.com has been registered anonymously through "Domains By Proxy, LLC." Despite purporting to be a business entity and interacting with the public and consumers on a regular basis through its website, TestInside has chosen to shield its actual contact information from the public by registering Test-Inside.com in this manner.

6.     Upon information and belief, as noted in this Complaint, TestKing, Pass4sure and TestInside are affiliated entities, acting in concert, operated/controlled by the same person(s), or are otherwise jointly engaged in the conduct alleged in this complaint.

7.     This Court has subject matter jurisdiction over the claims in this action pursuant to the provisions of 17 U.S.C. § 501, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

8.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) & (d). The infringing works/products that are the subject of this litigation were offered for distribution, sold, and delivered in/to this District and the claims alleged in this action arose in this District.   Venue is also proper under 28 U.S.C. § 1400(a).

**<u>General Allegations</u>**

9.     Cisco is in the business of, among other things, certifying the competency of individuals using Cisco products and services while engaged in various fields of the information technology industry (hereinafter, "Certification Programs").

10.     The purpose of Cisco's Certification Programs is: (1) to set an industry wide and globally recognized standard for basic competency levels in various fields of the information technology industry using Cisco products and services; (2) to provide objective standards which enable employers to maximize efficiency in recruiting, hiring, training, and promoting employees; (3) to help fill the needs of today's information technology workforce by providing individuals with skills in demand; and (4) to provide industry educators with the standards necessary to prepare individuals to meet the job skills of today.

11.     In order to become certified under any of Cisco's various Certification Programs, a candidate must pass the required certification exam(s) (the "Certification Exams") for a particular certification program.

12.     Cisco's certification programs (collectively, the "Certification Programs") include, but are not limited to, the following: (1) 200-120 CCNA [Cisco Certified Network Association]; (2) 300-101 ROUTE [Implementing Cisco IP Routing]; (3) 300-115 SWITCH [Implementing Cisco IP Switched Networks]; (4) 100-101 ICND1 [Interconnecting Cisco Networking Devices 1]; and (5) 200-101 ICND2 [Interconnecting Cisco Networking Devices 2].

13.     Cisco protects its Certification Exams through a variety of methods, including, but not limited to requiring its certified professionals to agree to a Non-Disclosure Agreement.  In addition, before an individual can take any Cisco Certification Exam, he or she must agree to the Cisco Certification and Confidentiality Agreement which prohibits, among other things, the unauthorized use, disclosure or distribution of

Certification Exam content.  Students who pass the necessary Certification Exams are eligible to designate themselves as "Certified" in a particular professional competency.

14.     Cisco further acts to protect its Certification Exams by utilizing a secure procedure to register its copyrights in its various Certification Exams.  Cisco's applications comply with the requirements of the Copyright Act (17 U.S.C. § 101, *et seq.*) and related regulations.

15.     The copyright in each of the exams alleged in this case was registered using the "secure" filing procedure with the United States Copyright Office in compliance with the Copyright Revision Act of 1976 (17 U.S.C. § 101, *et seq.*) and Copyright Office Regulations.  Copyright Office documents reflecting the Certificates of Registration relevant to this case, as well as a chart summarizing same, are included in the Appendix at Exhibit 1.

16.     Cisco has also duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including, but not limited to, the following trademarks and service marks (collectively, the "Marks") relevant to the claims in this litigation:

a)      "CISCO," Reg. No. 3,709,076, for numerous products and services, including: computer hardware and software and related goods and services; printed instructional materials, including books, manuals, guides, and test materials; information technology (IT) and communication services; and online services; as well as educational services, namely, conducting conferences, training courses, testing, workshops, and distributing course materials in connection therewith, all in the fields of computer networking, broadband

networks, computer systems, telecommunication systems, IP telephony, cable television systems, security and storage.

b)     "CISCO," Reg. No. 2,314,702, for educational services, namely, conferences, training courses, testing, workshops and distributing course materials in connection therewith, all in the fields of network communications, managing, operating and using local, wide and global area networks.

c)     "CISCO" (logo), Reg. No. 3,759,451, for numerous products and services, including: educational services, namely, conferences, training courses, testing, workshops, and distributing course materials in connection therewith, all in the fields of computer networking, broadband networks, computer systems, telecommunication systems, IP telephony, cable television systems, network security, and/or network storage.

d)     "CISCO" (logo in color), Reg. No. 4,263,591, for numerous products and services, including: educational services, namely, conferences, training courses, testing, workshops, and distributing course materials in connection therewith, all in the fields of computer networking, broadband networks, computer systems, telecommunication systems, IP telephony, cable television systems, network security, and/or network storage.

e)     "CISCO CERTIFIED CCIE," Reg. No. 3,847,628, for educational services, namely, conducting seminars, courses, and workshops in the field of networking equipment and computer systems; and providing testing for the purpose of certification to determine professional skills in the field of networking, equipment and computer systems.

f)      "CCIE," Reg. No. 2,468,245, in Class 41 for educational services, namely, conducting seminars, courses, and workshops in the field of networking equipment and computer systems;.

g)      "CCIE," Reg. No. 2,468,247, providing testing to determine professional skills in the field of networking equipment and computer systems; and

h)      "CCIE," Reg. No. 2,453,750, for instructional books and manuals, printed guides for teachers and printed materials, namely, test booklets, all in the field of internetworking.

True and correct copies of the certificates of registration for the marks are included in the Appendix at Exhibit 2.

17.     Cisco further protects its Certification Exams by utilizing technological measures such as password encryption with its test delivery provider, and requires candidates and other individuals to expressly accept a 'Non-Disclosure Agreement' twice before being granted access to the exams.   Exams are delivered to the test centers via a secure connection to a dedicated server at the test center.   A proctor is required to be physically onsite in order to monitor test candidates during the exam. Video monitoring may be used to aid the proctor's monitoring.   No outside electronic devices are allowed in the test center.

**Defendants' Unlawful Acts**

18.     Defendants operate websites at the Internet domain names "testking.com," "pass4sure.com," and "test-inside.com" (collectively, the "Websites," or, as appropriate, the "Domain Names"). Through the Websites, Defendants offer for sale so-called "practice exams" allegedly designed to prepare students to successfully pass Cisco Certification Exams.  Defendants allow their products to be purchased on-line and then delivered via a variety of means, including downloads to the purchaser's personal computer or related device and/or by mail.

19.     Cisco has evidence, is informed and believes, and on that basis alleges, that the Cisco Certification Exam practice exams Defendants sell through the Websites contain numerous exam questions and answers that are either identical or substantially similar to Cisco's copyrighted exam questions and answers.   In fact, Defendants, through the Websites, represent that their exams are the "real" exams with "actual" questions from Cisco's exams.  See, for example:







(*See also* Appendix at Ex. 3.)  Cisco has not licensed or authorized Defendants to copy or distribute its copyrighted exam content.

20.    Indeed, Cisco has conducted several test purchases of the "practice exams" offered on the Websites, analyzed the content, and determined that such content is virtually identical / substantially similar to Cisco's copyrighted exam questions and answers.  Specifically, investigators made several test purchases from Defendants. The purchased "training materials" were analyzed and were found to be infringing, including the following examples:

a)     On or about June 1, 2015, an investigator received via direct download a "practice exam" identified by TestKing as "Cisco 200-120 Questions & Answers with Explanations", which the investigator had purchased from TestKing via TestKing.com. Cisco subsequently procured a sample side-by-side examination and comparison to Cisco's copyright-protected exam "200-120 Cisco Certified Network Association [CCNA]." That analysis revealed that the sample reviewed from TestKing's "exam" was *virtually identical* to Cisco's 200-120 exam. Specifically, of a 50-question sample of Cisco's copyrighted questions and answers, *48 found exact/identical matches* to TestKing's purported practice exam, and *the remaining 2 questions in that sample were virtually identical* (in one question, TestKing's version had a colon instead of a period; and in the other question, TestKing's version had a word capitalized that is not capitalized in the original).

b)     On or about June 1, 2015, an investigator received via direct download a "practice exam" identified by TestKing as "Cisco 300-101 Questions & Answers with Explanations", which the investigator had purchased from TestKing via TestKing.com. Cisco subsequently procured a sample side-by-side examination and comparison to Cisco's copyright-protected exam "300-101 Implementing Cisco IP Routing [ROUTE]." That analysis revealed that the sample reviewed from TestKing's "exam" was *virtually identical* to Cisco's 300-101 exam. Specifically, of a 50-question sample reviewed (omitting non-textual simulation content), *49 questions were exact/identical matches* to Cisco's copyrighted questions and answers, and the remaining question was *virtually identical* (TestKing's version merely contained an extra space in the question).

c)     On or about June 1, 2015, an investigator received via direct download a "practice exam" identified by TestKing as "Cisco 300-115 Questions & Answers with Explanations", which the investigator had purchased from TestKing via TestKing.com. Cisco subsequently procured a sample side-by-side examination and comparison to Cisco's copyright-protected exam "300-115 Implementing Cisco IP Switched Networks [SWITCH]." That analysis revealed that the sample reviewed from TestKing's "exam" was *virtually identical* to Cisco's 300-115 exam. Specifically, of a 50-question sample reviewed, *48 were exact/identical matches* to Cisco's copyrighted questions and answers, and the remaining two questions were *virtually identical* (in one question, TestKing's version contained capitalized responses unlike the original; in the other, TestKing's version was missing half of the question).

d)     On or about June 1, 2015, an investigator received via direct download a "practice exam" identified by Pass4sure as "Cisco 200-120 Questions & Answers with Explanations", which the investigator had purchased from Pass4sure via Pass4sure.com. Cisco subsequently procured a sample side-by-side examination and comparison to Cisco's copyright-protected exam "200-120 Cisco Certified Network Association [CCNA]."   That analysis revealed that the sample reviewed from Pass4sure's "exam" was *virtually identical* to Cisco's 200-120 exam.  Specifically, of a 53-question sample reviewed, *48 were exact/identical matches* to Cisco's copyrighted questions and answers, and *2 were virtually identical* (in one question, Pass4sure's version had one grammatical difference from the original; and in the other question, Pass4sure's version referenced an exhibit not listed in the original).

e)     On or about June 1, 2015, an investigator received via direct download a "practice exam" identified by Pass4sure as "Cisco 300-101 Questions & Answers with Explanations", which the investigator had purchased from Pass4sure via Pass4sure.com. Cisco subsequently procured a sample side-by-side examination and comparison to Cisco's copyright-protected exam "300-101 Implementing Cisco IP Routing [ROUTE]."  That analysis revealed that the sample reviewed from Pass4sure's "exam" was *virtually identical* to Cisco's 300-101 exam.  Specifically, of a 50-question sample reviewed (omitting non-textual simulation content), *48 questions were exact/identical matches* to Cisco's copyrighted questions and answers, and the remaining two questions were *virtually identical* (in Pass4sure's version, one exam question contained an extra space, and another question had one extra capitalized letter).

   (i)     Notably, Pass4sure's "300-101 exam" and TestKing's "300-101 exam" each contain the same minor difference from Cisco's original 300-101 exam.

f)     On or about June 1, 2015, an investigator received via direct download a "practice exam" identified by Pass4sure as "Cisco 300-115 Questions & Answers with Explanations", which the investigator had purchased from Pass4sure via Pass4sure.com. Cisco subsequently procured a sample side-by-side examination and comparison to Cisco's copyright-protected exam "300-115 Implementing Cisco IP Switched Networks [SWITCH]."   That analysis revealed that the sample reviewed from Pass4sure's "exam" was *virtually identical* to Cisco's 300-115 exam. Specifically, of a 50-question sample reviewed, *48 were exact/identical matches* to Cisco's copyrighted questions and answers, and the remaining two questions were *virtually identical*

(in one question, Pass4sure's version contained capitalized responses unlike the original; in the other, Pass4sure's version was missing half of the question).

(i)  Notably, Pass4sure's "300-115 exam" and TestKing's "300-115 exam" are identical, even in their differences from the original Cisco 300-115 exam.  In other words, they are the same work.

g)  On or about June 10, 2015, an investigator received via direct download a file entitled "Cisco 200-101 Questions & Answers with Explanations," which the investigator had purchased from TestInside via Test-Inside.com.  Cisco subsequently procured a sample side-by-side examination and comparison to Cisco's copyright-protected exam "200-101 Interconnecting Cisco Networking Devices 2 [ICND2]."  That analysis revealed that the sample reviewed from TestInside's "exam" was *virtually identical* to Cisco's 200-101 exam.  Specifically, of a 63-question sample reviewed, *52 were exact/identical matches* to Cisco's copyrighted questions and answers, and 3 questions were *virtually identical* (in one question, TestInside's version contained two extra words in the question; in the other two questions, TestInside's version capitalized the answers).

h)  On or about June 12, 2015, an investigator received via direct download a file entitled "Cisco 100-101 Questions & Answers with Explanations," which the investigator had purchased from TestInside via Test-Inside.com.  Cisco subsequently procured a sample side-by-side examination and comparison to Cisco's copyright-protected exam "100-101 Interconnecting Cisco Networking Devices 1 [ICND1]."  That analysis revealed that the sample reviewed from TestInside's "exam" was *virtually identical* to Cisco's 100-101 exam.  Specifically, of a 50-question sample reviewed, *45 were exact/identical matches* to Cisco's copyrighted questions and answers, and the remaining 5 questions were *virtually identical* (in three of those questions, TestInside's version listed an incorrect number in response; in the remaining two questions, TestInside's version capitalized the responses).

i)  On or about June 2, 2015, an investigator received via direct download a "practice exam" identified by TestInside as "Cisco 300-115 Questions & Answers with Explanations", which the investigator had purchased from TestInside via Test-Inside.com. Cisco subsequently procured a sample side-by-side examination and comparison to Cisco's copyright-protected exam "300-115 Implementing Cisco IP Switched Networks [SWITCH]."  That analysis revealed that the sample reviewed from TestInside's "exam" was *virtually identical* to Cisco's 300-115 exam.

Specifically, of a 50-question sample reviewed, *48 were exact/identical matches* to Cisco's copyrighted questions and answers, and the remaining two questions were *virtually identical* (in one question, TestInside's version contained capitalized responses unlike the original; in the other, TestInside's version was missing half of the question).  In one of the identical matches, TestInside identified the wrong answer as "correct."

(i)   Notably, aside from the single incorrect answer, TestInside's "300-115 exam" is identical to **both** Pass4sure's "300-115 exam" and TestKing's "300-115 exam," even in their differences from the original Cisco 300-115 exam.  In other words, except for a single inaccurate answer listed, they are the same work.

21.    In the process of acquiring and reviewing Defendants' products, Cisco has confirmed that Defendants share a PayPal account through which Defendants process the payments they receive from selling infringing exams.  Notably, PayPal represents that "[a] PayPal account can only be associated with one person and one email address.  If you want to share your PayPal account with someone, you both need to log in using the same email address and password."  *See* https://www.paypal.com/us/webapps/helpcenter/helphub/article/?solutionId=FAQ2347.

22.    Obviously Defendants' customers who purchase Cisco exam questions and answers are not required to pass through any of the technological measures that Cisco uses to control access to and protect its rights in the exams.  Indeed, rather than being provided access to this information in a controlled and secure testing environment, the Defendants allow their customers to download these exams to their personal computers, within the privacy of their own homes, and with no ability to restrict the future copying or use of those items.

23.    Cisco has put Defendants on notice of their misconduct and demanded that Defendants cease and desist from same.  Despite such notice, Defendants have continued to sell the infringing content through the Websites.

24.     Based on the facts alleged herein, Defendants have committed, and are committing, flagrant acts of copyright infringement.  These acts of infringement are willful, deliberate and committed with knowledge of Cisco's copyrighted material. Defendants promote this unlawful business, and sell those unauthorized products, by advertising and otherwise using in commerce, without Cisco's authorization, the Marks. Moreover, Defendants pass off their products as their own, when in fact such products are actually *Cisco's* confidential exams.

**COUNT I – <u>Copyright Infringement</u>**

25*.*     Plaintiff realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 24 above as though fully set forth herein.

26.     Cisco is the author, creator and owner of the right, title and interest in various copyrighted Certification Exams filed with the United States Copyright Office, including those at issue in this case.

27.     The Defendants have willfully infringed Cisco's copyrights by copying and distributing, without authorization or approval, Cisco's Certification Exams and/or making other infringing use of the Certification Exams in the United States of America. A finding of willfulness is supported by the evidence, including, but not necessarily limited to, continuing their course of conduct after being put on notice of the unlawfulness of same.

28.     As a result of the foregoing activities, Defendants are liable to Cisco for willful infringement under 17 U.S.C. § 501, et seq.

29.     Cisco has suffered, and will continue to suffer, substantial and irreparable damage to its business reputation and goodwill, as well as monetary losses in an amount not yet fully ascertained.

30.     Cisco has no adequate remedy at law for Defendants' wrongful conduct in that:  (1) Cisco's copyrights are unique and valuable property that have no readily determinable market value; (2) the infringement by Defendants constitutes interference with Cisco's goodwill and customer relations; and (3) Defendants' wrongful conduct and the damage resulting therefrom is continuing.  Therefore, Cisco is entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an Order under 17 U.S.C. § 503 that any infringing works should be impounded and destroyed.  In furtherance of such relief, the Court should order, among other things, that the Domain Names from which the infringing works are distributed (testking.com, pass4sure.com, and test-inside.com) – be frozen and/or impounded pending the resolution of this litigation.

**COUNT II – <u>Trademark Infringement, 15 U.S.C. § 1114, *et seq.*</u>**

31.     Cisco repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 30, inclusive.

32.     Defendants' activities constitute infringement of Cisco's federally registered Marks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114(1).

33.     Because Cisco advertises and markets its Certification Programs under, among others, the Marks described in this Complaint, these Marks are the means by

which Cisco's Certification Programs are distinguished from the exams, programs, products and services of others in the same field or related fields.

34.     Because of Cisco's long, continuous, and exclusive use of these Marks, they have come to mean, and are understood by customers, end users, and the public to signify products or services of Cisco.

35.     Defendants' wrongful conduct includes the distribution of purported "Cisco" "training materials" without the authorization of Cisco.  These products that Defendants have offered, advertised, marketed, sold and/or distributed, and are continuing to offer, advertise, market, sell and/or distribute, are likely to cause confusion, mistake, or deception as to their source, origin, or authenticity.

36.     Defendants' activities are likely to lead the public to conclude, incorrectly, that the "Cisco" "training materials" that Defendants are using, advertising, installing, marketing, offering, or distributing originate with or are authorized by Cisco, to the damage and harm of Cisco, its licensees, and the public.

37.     Defendants have offered, advertised, used, marketed, installed, or distributed material that infringes Cisco's registered Marks with the willful and calculated purposes of (a) misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the infringing products, and (b) trading upon Cisco's business reputation and goodwill.  At a minimum, Defendants acted with willful blindness to and in reckless disregard of Cisco's registered Marks.

38.     As a result of their wrongful conduct, Defendants are liable to Cisco for trademark infringement.  Cisco has suffered, and will continue to suffer, substantial losses, including, but not limited to, damage to its business reputation and goodwill.

Cisco is entitled to recover damages, which include its losses and all profits Defendants have made as a result of their wrongful conduct, pursuant to 15 U.S.C. § 1117(a).

39.     Alternatively, Cisco is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c).  In addition, because Defendants' infringement of Cisco's trademark rights was willful, within the meaning of the Lanham Trademark Act, the award of damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b).

40.     Cisco is also entitled to recover its attorney's fees and costs of suit pursuant to 15 U.S.C. § 1117.

41.     Pursuant to 15 U.S.C. §§ 1116 and 1118 and/or other applicable law, Cisco is further entitled to injunctive relief enjoining Defendants' wrongful conduct, an order impounding all counterfeit and/or infringing articles, and an order freezing the electronic and other banking accounts utilized by Defendants to profit from and further invest in their unlawful counterfeiting and trafficking of infringing products, and which are in fact being held in constructive trust for Cisco, at least until such time as a hearing can be held and Cisco's rights to relief (including an accounting) can be adjudicated.


**COUNT III – <u>False Designation of Origin, 15 U.S.C. § 1125, *et seq.*</u>**

42.     Cisco repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 41, inclusive.

43.     Because Cisco advertises and markets its Certification Exams and Programs under the Marks described in this Complaint, these Marks are the means by which Cisco's exams and programs are distinguished from the exams and programs of others in the same field or related fields.

44.     Because of Cisco's long, continuous, and exclusive use of these Marks, they have come to mean, and are understood by customers, end users, and the public to signify products or services of Cisco.

45.     Defendants' wrongful conduct – including, but not limited to, reverse passing off of Cisco's actual certification exams as if they were "study guides" or exam preparation material deriving from Defendants – is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between Cisco and Defendants, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Cisco, in violation of the Lanham Act.

46.     Defendants' wrongful conduct – including, but not limited to, offering, advertising, marketing, and distributing Cisco's actual certification exams as if they were "study guides" or exam preparation material deriving from Defendants – constitutes misrepresenting the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities, in violation of the Lanham Act.

47.     Defendants engaged in wrongful conduct in violation of the Lanham Act with the willful purpose of (a) misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the goods and services offered, marketed or distributed in connection with Cisco's Marks, name, products, and services, and (b) trading upon Cisco's business reputation and goodwill.

48.     Defendants' conduct constitutes (a) false designation of origin and/or (b) false or misleading description, in violation of § 43(a) of the Lanham Trademark Act, set forth at 15 U.S.C. § 1125(a).

49. Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

50. As a result of Defendants' wrongful conduct, Cisco has suffered and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

51. Cisco is also entitled to recover its attorney's fees and costs of suit pursuant to 15 U.S.C. § 1117.

52. Cisco is further entitled to injunctive relief enjoining Defendants' wrongful conduct pursuant to 15 U.S.C. § 1125(c), an order impounding and/or destroying all infringing items pursuant to 15 U.S.C. §§ 1125(c), and an order freezing the electronic and other banking accounts utilized by Defendants to profit from and further invest in their unlawful counterfeiting and trafficking of infringing products, and which are in fact being held in constructive trust for Cisco, at least until such time as a hearing can be held and Cisco's rights to relief (including an accounting) can be adjudicated.

**COUNT FOUR – <u>Constructive Trust Upon Illegal Profits</u>**

53. Cisco repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 52, inclusive.

54. Defendants' acts and conduct constitute deceptive, fraudulent, and wrongful conduct in the nature of passing off the infringing "training materials" as approved or authorized by Cisco.

55. By virtue of Defendants' wrongful acts and conduct, Defendants have illegally received money and profits that rightfully belong to Cisco.

56.     Cisco is entitled pursuant to 17 U.S.C. § 504(b) to recover all profits of Defendants that are attributable to their acts of infringement or violations thereof.

57.     Upon information and belief, Defendants hold the illegally received money and profits in the form of bank accounts and/or real/personal property that can be located and traced.

58.     Defendants hold the money and profits it has illegally received as constructive trustee for the benefit of Cisco.


**COUNT FIVE - <u>Accounting</u>**

59.     Cisco repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 58, inclusive.

60.     Cisco is entitled, pursuant to 17 U.S.C. § 504(b), to recover all profits of Defendants that are attributable to their acts of infringement or violations thereof.

61.     The amount of money due from Defendants to Cisco is unknown to Cisco and cannot be ascertained without a detailed accounting by Defendants of the precise number of units of infringing material offered for distribution and distributed by Defendants.


**COUNT SIX - <u>Connecticut Unfair Trade Practices Act (CUTPA)</u>**

62.     Cisco repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 61, inclusive.

63.     Defendants are "persons" within the meaning of Conn. Gen. Stat. § 42-110a.

64.     With respect to the foregoing acts and conduct, Defendants were engaged in the conduct of trade or commerce, as those terms are defined in the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a, *et seq.*

65.     The foregoing conduct by Defendants constitutes unfair methods of competition, deceptive acts or practices in the conduct of a trade or commerce, and/or unfair acts or practices in the conduct of a trade or commerce, in violation of CUTPA, in that such conduct is offensive to public policy, egregious, unconscionable, immoral, unethical, oppressive, deceptive and/or unscrupulous, and has caused, and may continue to cause, substantial injury to Plaintiff, in addition to consumers and/or others.

66.     Defendants' foregoing conduct has caused, and in the future will continue to cause, ascertainable loss to Plaintiff.

67.     A copy of this Complaint has been mailed to the Attorney General of the State of Connecticut and the Commissioner of Consumer Protection in accordance with Conn. Gen. Stat. § 42-110g.

**COUNT SEVEN – <u>Unjust Enrichment</u>**

68.     Cisco repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 67, inclusive.

69.     As a result of the wrongful conduct alleged herein, Defendants have been and will be unjustly enriched at the expense of Cisco.  Among other things, Defendants have unjustly reaped the benefits of selling content actually developed by Cisco (at great expense to Cisco) with no, or virtually no, costs borne by Defendants.

70.     Defendants' retention of these benefits was and is without justification and constitutes unjust enrichment.

71.     Defendants should be required to disgorge and turn over to Cisco the gain that Defendants illegally and wrongfully obtained at the expense of Cisco, and a constructive trust should be imposed thereon.  The amount of this unjust enrichment cannot be stated with certainty at the present time but can be further developed through discovery.

72.     Cisco lacks an adequate remedy at law for such conduct and is entitled, among other relief, to recover these benefits from Defendants, in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Cisco respectfully requests judgment as follows:

1.      That the Court enter judgment against Defendants that they have willfully infringed Cisco's rights in its copyrighted Certification Exams under 17 U.S.C. § 501, *et seq.;*

2.      That the Court enter judgment against Defendants that they have willfully violated the Lanham Act, and infringed Cisco's registered Marks, in violation of 15 U.S.C. §§ 1114 and 1125;

3.      That the Court enter a judgment against Defendants finding that Defendants have violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.;*

4.      That the Court enter a judgment against Defendants finding that Defendants have been unjustly enriched at the expense of Cisco;

5.      That the Court issue temporary, preliminary, and permanent injunctive relief against the Defendants and that Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants be enjoined and restrained from:

(a)      Imitating, copying or making any other infringing use or infringing distribution of any Cisco Certification Exams or variations thereof;

(b)      Using reproductions, counterfeits, copies, or colorable imitations of Cisco's copyrighted Certification Exams or variations thereof, and the distribution, offering for distribution, circulation, sale, offering for sale, advertising, importing,

promoting or displaying of spurious products or merchandise not authorized or licensed by Cisco;

(c)     Utilizing or maintaining any website to store material that infringes on Cisco's Certification Exams;

(d)     Providing in any medium whatsoever Cisco's Certification Exams without express authorization from Cisco; and

(e)     Assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (a) through (d) above.

6.     That the Court enter an Order of impoundment and destruction pursuant to Section 17 U.S.C. § 503, 15 U.S.C. § 1116, and 28 U.S.C. § 1651(a), impounding all infringing copies of Cisco's Certification Exams, and any related item, including business records which are in Defendants' possession and under their control;

7.     That the Court enter an Order pursuant to 17 U.S.C. § 503, 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), and/or other appropriate authority, requiring that the Domain Names be restricted from transfer, impounded, and transferred to Cisco;

8.     That the Court enter an Order declaring that Defendants hold in trust, as constructive trustee for the benefit of Cisco, their illegal profits gained from the distribution of infringing copies of Cisco's Certification Exams, and requiring Defendants to provide Cisco with a full and complete accounting of all amounts due and owing to Cisco as a result of Defendants' infringing activities;

9.     That the Court enter an Order requiring Defendants to pay Cisco's general, special, actual and statutory damages as follows;

a)   Cisco's damages and Defendants' profits pursuant to 17 U.S.C. § 504(b); or, in the alternative, enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2) for any and all willful infringement of Cisco's previously registered copyrights;

b)   Cisco's damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for Defendants' willful violation of Cisco's registered marks, or alternatively, enhanced statutory damages pursuant to 15 U.S.C. § 1117(c) for Defendants' willful circulation of Cisco's Marks, plus Plaintiff's attorneys' fees;

c)   Plaintiff's damages pursuant to CUTPA, Conn. Gen. Stat. § 42-110g, including, but not limited to, compensatory and punitive damages and attorneys' fees; and

d)   Plaintiff's damages available pursuant to applicable law as a result of Defendants' unjust enrichment.

10.   That the Court order Defendants to pay Cisco both the cost of this action and reasonable attorneys' fees incurred by Cisco in prosecuting this action, and all available interest; and

11.   That the Court grant Cisco such additional relief as is just and proper.

Dated this 23rd day of June, 2015.

THE PLAINTIFF
CISCO TECHNOLOGY, INC.

By: _____/s/_____
    Brian C. Roche – ct 17975
    Gerald C. Pia, Jr. – ct 21296
    Roche Pia, LLC
    Two Corporate Drive, Suite 248
    Shelton, CT 06484
    Phone: (203) 944-0235
    Fax: (203) 567-8033
    E-mail: broche@rochepia.com
            gpia@rochepia.com