UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CISCO TECHNOLOGY, INC.,** | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:15-CV-00965 (VLB) |
| | : | |
| v. | : | |
| | : | |
| **CERTIFICATION TRENDZ, LTD. d/b/a** | : | |
| **TestKing.com, FREETECH SERVICES,** | : | |
| **LTD. d/b/a Pass4sure.com, and GLOBAL** | : | |
| **SIMULATORS, LTD. d/b/a "TestInside"** | : | |
| **And Test-Inside.com,** | : | |
| Defendants. | : | March 25, 2016 |

**MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTION TO DISMISS [Dkt. 49] AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT [Dkt. 63]**

I.   Introduction

The Plaintiff Cisco Technology, Inc. ("Cisco") brings this action against Defendants Certification Trendz Ltd., doing business as TestKing.com ("TestKing"); Freetech Services Ltd., doing business as Pass4sure.com ("Pass4sure"); and Global Simulators Ltd., doing business as "TestInside" and Test-Inside.com ("TestInside") (collectively, the "Defendants") asserting seven causes of action, including copyright violations and trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)-(B), related to Defendants' unauthorized distribution of content copied from Cisco's certification testing products.  Defendants have moved to dismiss Plaintiff's Lanham Act claims (Count Three) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, arguing that under the United States Supreme

1

Court's opinion in *Dastar*, Plaintiff cannot successfully maintain an action for false designation of origin under the Lanham Act because Cisco's products have been modified in substance, and therefore Defendants are the true "origin" of their products.

For the reasons that follow, Plaintiff's Motion to Amend is GRANTED and Defendants' Motion to Dismiss is DENIED.

II.     Factual Background

The following facts and allegations are taken from Plaintiff's Complaint, filed on June 23, 2015.  [Dkt. 1].

Cisco is an information technology company founded in 1984, with its principal place of business in San Jose, California.  *Id.* ¶ 2.  Plaintiff is in the business of, among other things, certifying the competency of individuals using Cisco products and services in the information technology industry (the "Certification Programs").  *Id.* ¶ 9.  In order to become certified under any of Cisco's many Certification Programs, a candidate must pass a required examination or examinations (the "Certification Exams").  *Id.* ¶ 11.

Cisco registers copyrights for its Certification Exams, including the exams in question in the instant action.  *Id.* ¶ 15.  Cisco also registers trademarks, including trademarks for "educational services, namely, conferences, training courses, testing, workshops and distributing course materials in connection therewith" (the "Marks") related to the exams in question in the instant action.  *Id.* ¶ 16.  Finally, Cisco requires its certified professionals to agree to a Non-

Disclosure Agreement as well as a Confidentiality Agreement that prohibits "the unauthorized use, disclosure or distribution of Certification Exam content." *Id.* ¶ 13.

Defendants TestKing, Pass4sure and TestInside are anonymously-registered websites located in the United Kingdom. *Id.* ¶¶ 3-5. Defendants are alleged to share a single PayPal payment processing account. *Id.* ¶ 21. Defendants offer for sale certain "practice exams" that are designed to prepare students for Cisco's Certification Exams. *Id.* ¶ 18. The materials are sold on-line and then delivered "via a variety of means, including downloads to the purchaser's personal computer or related device and/or by mail." *Id.* Cisco alleges that it has purchased and analyzed materials sold by Defendants, and that the materials "contain numerous exam questions and answers that are either identical or substantially similar to Cisco's copyrighted exam questions and answers." *Id.* ¶¶ 19-20. The Complaint includes "screenshots" of several of Defendants' websites, which advertise that the training materials include "REAL Exam Questions and Answers from the ACTUAL Test." *Id.* ¶ 19. At least some of Defendants' products are also advertised as including "Expert Verified Answers . . . With Explanations." *Id.*

On June 26, 2015, this Court granted Cisco's application for a Temporary Restraining Order and entered two Orders both enjoining further distribution of Plaintiff's products and freezing Defendants' assets and accounts that Plaintiff had identified in its application. [Dkt. 23]. Upon the agreement of the parties, the Court vacated the TRO that froze Defendants' assets and ordered Defendants to

3

post security of $600,000 to a trust account, and ordered the parties to submit a stipulated Preliminary Injunction that would remain in effect pending disposition of this litigation. [Dkt. 36]. The parties were unable to reach agreement on the scope of a preliminary injunction and the TRO enjoining further distribution of Plaintiff's products has remained in effect pending resolution of legal issues the parties have raised regarding the scope of the preliminary injunction. Thereafter, Defendants filed the instant motion and sought dismissal of Counts Three, Four and Five of Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. 49]. Plaintiff thereafter filed a Motion for Leave to Amend the Complaint which omitted Counts Four and Five. [Dkt. 63]. Defendants have opposed the Motion for Leave to Amend and argue instead that Counts Four and Five should be dismissed and the Motion to Amend denied as moot. [Dkt. 65].

For the reasons stated below, Plaintiff's Motion to Amend is GRANTED and Defendants' Motion to Dismiss is DENIED as to Count Three of Plaintiff's Complaint and DENIED AS MOOT as to Counts Four and Five.

III.   <u>Standard of Review</u>

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint

4

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun &*

5

*Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005) (MRK).

IV. <u>Discussion</u>

    a. <u>Plaintiff's Motion for Leave to Amend the Complaint</u>

Plaintiff's Motion for Leave to Amend [Dkt. 63] seeks to add a paragraph to the Complaint stating that following the Court's entry of the TRO, Cisco obtained all of Defendants' practice materials and compared them to Cisco's actual exams and found that most of the exams were a "100% match" to an actual Cisco exam and the rest were at least a "94% match."  [Dkt. 63-1, Amended Compl. ¶ 21].  The proposed Amended Complaint also changes the title of Count Three from "False Designation of Origin, 15 U.S.C. § 1125" to "Violation of 15 U.S.C. § 1125(a)(1)(A) and/or § 1125(a)(1)(B)."  *Id.* ¶ 43.  Count Three of the Amended Complaint also includes a new allegation, somewhat cumulative to the rest of the Complaint, that accuses Defendants of "selling products that purport to be "study guides" . . . that would allow candidates to prepare for Cisco exams when, in fact, such products are Cisco"s actual exams (stolen or otherwise misappropriated or obtained by Defendants) that allow candidates to cheat on those exams" by, for example, memorizing the questions and answers and parroting the answer on an actual exam.  As a result, test takers would become certified without being

6

qualified.  *Id.* ¶ 46.  Finally, the proposed Amended Complaint omits Counts Four and Five, which were subject to Defendant's Motion to Dismiss.  [Dkt. 49].

The Federal Rules of Civil Procedure provide that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "[i]t is well established that leave to amend a complaint need not be granted when amendment would be futile."  *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).  Defendants argue that because Count Three of the Original Complaint should be dismissed under either 15 U.S.C. § 1125(a)(1)(A) or (a)(1)(B), adding text clarifying that Plaintiff seeks a remedy under both provisions would be futile.  Defendants argue that the other changes in the Amended Complaint are "purely cosmetic" and that Cisco's findings after the TRO was entered are irrelevant and unnecessary.  [Dkt. 65, Def.'s Opp. Mem. at 4].

First, the Court notes that this case is in its infancy and the Defendants do not allege that they would be prejudiced by allowing the Plaintiff to amend the complaint.  "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend."  *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).  Moreover, parties may amend their pleadings to assert new claims long after they acquired facts necessary to support those claims.  *See, e.g., Green v. Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (plaintiff was aware of facts asserted in amended complaint from outset of case).  Because the Court finds below that Count Three cannot be dismissed, and because some of the proposed changes help to clarify

7

that Plaintiff also seeks a remedy under 15 U.S.C. § 1125(a)(1)(B), Cisco's Motion for Leave to Amend the Complaint is GRANTED and Defendant's Motion to Dismiss Counts Four and Five is DENIED AS MOOT.

### b. Defendant's Motion to Dismiss Count Three

In support of their Motion to Dismiss Count Three of the Original Complaint, Defendants argue that Plaintiff's trademark infringement claim for "False Designation of Origin" under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), cannot succeed in light of the Supreme Court's opinion in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003).  The Lanham Act provides, inter alia:

> **(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--**
>
> > **(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or,**
> >
> > **(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities**
>
> 15 U.S.C. § 1125(a).

Plaintiff in *Dastar*, Twentieth Century Fox ("Fox") created and produced a World War II documentary television series called "Crusade in Europe" based on memoirs authored by Dwight D. Eisenhower of the same title.  539 U.S. at 23.  In

8

1977, Fox elected not to renew its copyright on the Crusade in Europe series, leaving it "in the public domain." *Id* at 26. In 1995, defendant Dastar Corporation ("Dastar") created its own version of the television series, titled "World War II Campaigns in Europe," by copying and making "minor" modifications to the original version. *Id.* Dastar marketed the tapes of the series as its own product and did not credit Fox or make any reference to the original series or memoirs. *Id.* at 27. Fox claimed that Dastar had engaged in "reverse passing off" – where a producer "misrepresents someone else's goods or services as his own" – in violation of the Lanham Act's prohibition against creating "confusion . . . as to the origin . . . of his or her goods." *Id.* at 38, n. 2.

The Supreme Court first noted that "Section 43(a) of the Lanham Act prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill . . . the words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." *Id.* at 32-33. The Court noted that "[i]n general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying" and cautioned against "misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright." *Id.* at 33-34 (internal citations and quotations omitted). The Court held that the "origin" of the "goods" within the meaning of the Lanham Act refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. The Court noted that if the opposite were true, the Lanham Act would create "a species of

9

perpetual patent and copyright" and that the word "origin" would have "no discernable limits." *Id.*

Of particular import here, the Court in *Dastar* held that although Fox's claim for "false designation of origin" would have "undoubtedly" been sustained "if Dastar had bought some . . . Crusade videotapes and merely repackaged them as its own," Dastar had in fact taken "creative work in the public domain," made "modifications (arguably minor), and produced its very own series of videotapes." *Id.* at 31. The parties to the instant case disagree as to whether the instant claim falls under the former set of circumstances or the latter.

Defendants point out that the Complaint alleges that Defendants' products "<u>contain</u> numerous exam questions and answers that are either identical or substantially similar" to copyrighted questions and answers. [Def.'s Mem. at 7] (emphasis original). Defendants emphasize the word "contain" and note that their products also "include original materials such as explanations." *Id.* Such modifications, Defendants argue, create a new product which, under *Dastar*, cannot support a false designation of origin claim under the Lanham Act.

Plaintiff, however, argues that Defendants' study guides are "actually Cisco's certification exams." [Pl.'s Opp. At 6]. Plaintiffs analogize that the situation is "as if Defendants marketed and sold a 'Guide to Understanding the Worlds of Harry Potter,' but, once you turn to the first page, you see it is actually Harry Potter." *Id.* at 7.

In the Court's view, the presence of explanations and other similar content which could theoretically create a "new" product based upon the original could conceivably be dispositive as to Plaintiff's false designation of origin claim. However, the actual products sold by Defendants are not before the Court on this Motion to Dismiss and are not attached to the Complaint.  Although the "screenshot" provided in the Complaint indicates that at least one "practice exam" sold by Defendants included "Expert Verified Answers . . . With Explanations," the Court cannot determine whether any explanations are provided in the materials and the source of those explanations.   Plaintiffs must meet a high bar to show that Defendants products are re-packaged, virtually identical copies of trademarked Cisco exams.[1]

If, on the other hand, it can be shown at summary judgment that Defendants have added content to these exams in the form of answer explanations, Plaintiff's false designation of origin claim would likely fail under *Dastar* and its progeny.  If any unique explanations have been added, the proper analogy would be a "Guide to Understanding the Worlds of Harry Potter" that contains both illegally copied footage from the actual film, and audio commentary relaying strategies for young wizards to become successful Quidditch players.

---

[1] . Plaintiff also claims that Defendants actually use the Cisco name in their products thereby trading on the Cisco name and further distinguishing this case from Dastar in which the defendant marketed the tapes of the series as its own product and did not credit Fox or make any reference to the original series or memoirs.  See *Dastar*, 539 U.S. at 38 (noting that "if Dastar had simply "copied [the television series] as Crusade in Europe and sold it as Crusade in Europe," without changing the title or packaging (including the original credits to Fox), it is hard to have confidence in respondents' assurance that they "would not be here on a Lanham Act cause of action").

For such an creative amalgamation, Sec. 1125(a)(1)(A) would not provide a remedy for false designation of origin.

However, the analysis cannot end here. Virtually untouched by the parties in briefing is the possibility that Cisco may assert a "traditional confusion" claim under § 1125(a)(1)(A) because of Defendants' use of a "word, term" or "misleading description of fact" which is "likely to cause confusion . . . as to the . . . sponsorship, or approval" of the exams in question.  15 U.S.C. § 1125(a)(1); *see* Pl.'s Opp. Mem. at 6, n. 4.  Key to any such claim would be Defendants' use of the description "REAL Exam Questions and Answers from the ACTUAL Test."

A consumer of one of Defendants' study guides may purchase such guides because the consumer knows that the questions and answers contain illicitly-obtained content that could help the consumer cheat on a Cisco exam.  On the other hand, a consumer of one of Defendants' study guides may simply be looking for a cheaper alternative to more expensive guides, and may be surprised to learn that the "practice" questions had not been released to the public and could potentially show up on a future exam.  The latter consumer might well be concerned that a practical test proctor would change such questions not only to eliminate the possibility of cheating, but also, more alarmingly, to catch those who have downloaded Defendants' products.

By using terminology such as "ACTUAL" and "REAL," Defendants may have implied to potential consumers both the authorization to release such questions and the presence of such questions in the public domain.  In other

12

words, the typical consumer does not expect authentic and openly-marketed goods to be stolen.  This is precisely the type of trademark infringement that could "deceive consumers and impair a producer's goodwill" and the type of commercial activity that could fall well within the umbrella of conduct prohibited by Sec. 43(a) of the Lanham Act.  *See Dastar*, 539 U.S. at 36 (noting that Dastar "could face Lanham Act liability for crediting the creator if that should be regarded as implying the creator's "sponsorship or approval" of the copy").

In a similar vein, Plaintiff may have a claim under 15 U.S.C. § 1125 (a)(1)(B) if Plaintiff can show that Defendants have advertised their products through the use of terms like "ACTUAL" and "REAL" or other descriptions to give consumers the impression that their questions and answers had been released to the public in at least some capacity by Cisco.  Such advertising could "misrepresent[] the nature, characteristics [or] qualities" of the product by leading a consumer to believe that they were not cheating, when, at least in the testmaker or proctor's view, they were.  *See Dastar*, 539 U.S. at 38 (noting that a producer of a series "substantially similar" to Crusade in Europe could face Lanham Act liability for giving consumers, in advertising or promotion, "the impression that the video was quite different from that series").

Normally, "the mere fact that the sale is unauthorized . . . does not give rise to an infringement claim when the marked goods are genuine."  *See H.L. Hayden Co. of N.Y. v. Siemens Medical Systems*, 879 F.2d 1005, 1023 (2d Cir. 1989).  Here, however, we may not have a "genuine" good because the Cisco exams may not have ever been released for public consumption in the first place.  Defendants

13

"study guides" may turn out to be the first instance of the prior exam questions actually being sold to the public.  The issue would become whether that sale, in and of itself, implies an authorization or approval to release prior exam questions that could confuse a consumer who may not wish to obtain the prior exams illicitly.  Thus, the more relevant analogy may ultimately be an "OFFICIAL Guide to Understanding the Worlds of Harry Potter" that contained footage from the original film illicitly recorded with a handheld camera and notes stolen from J.K. Rowling's office that were not intended as a commentary on the film.

The Court cannot pass judgment on Plaintiff's Lanham Act claim without a closer look at the products and the related marketing at issue.  Defendant's Motion to Dismiss is DENIED as to Count Three.

V.    Conclusion

For the foregoing reasons, Plaintiff's Motion to Amend is GRANTED and Defendants' Motion to Dismiss is DENIED as to Count Three and DENIED AS MOOT as to Counts Four and Five.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 25, 2016

14